### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**EDWARD TORRES,**

**Plaintiff,**

**v.**                                                    **Case No:  6:15-cv-1911-Orl-37DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

### REPORT AND RECOMMENDATION

Edward Torres (Claimant) appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for disability benefits.  Doc. 1; R. 9-29.  Claimant argued that the Administrative Law Judge (the ALJ) erred by: 1) failing to apply the correct legal standards to the opinion of Maria Rodriguez, M.D. (Dr. Rodriguez); 2) failing to comply with the Court's Remand Order and the Appeals Council's Remand Order by failing to apply the correct legal standards to the opinions of Luis G. Allen, M.D. (Dr. Allen) and Kevin Kearney, A.R.N.P. (Nurse Kearney); 3) and by failing to satisfy the burden of proof at step five of the sequential evaluation process.  Doc. 17 at 2, 14-15.  Claimant seeks reversal for an award of benefits.  Doc. 17 at 2, 18-19.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **REVERSED** and this matter be **REMANDED** for further proceedings.

### I.      PROCEDURAL HISTORY.

On January 4, 2011, Claimant filed an application for disability insurance benefits (DIB), alleging a disability onset date of November 13, 2008.  R. 139–40.  On January 4, 2012, the ALJ

entered a decision finding that Claimant was not disabled through the date of the decision.  R. 9-29.  The Appeals Council subsequently denied Claimant's request for review, thus the ALJ's decision became the Commissioner's final decision.  R. 1-6, 511-16, 613-16.

Thereafter, Claimant appealed the Commissioner's final decision to this Court.   On November 15, 2013, Magistrate Judge David A. Baker entered an order reversing and remanding the Commissioner's final decision for the following further action:

> Upon remand, the Administrative Law Judge will provide the claimant with an opportunity to submit additional evidence; re-evaluate the claimant's mental impairments pursuant to the special technique in 20 CFR 404.1520a; if warranted and available, obtain medical expert testimony regarding the nature and severity of the claimant's impairments; reconsider the claimant's residual functional capacity, and in so doing, further evaluate the opinion evidence from Dr. Allen; further evaluate the evidence from "other sources" pursuant to Social Security Ruling 06-03p; seek supplemental vocational expert testimony to determine whether there are a significant number of jobs in the national economy that the claimant can perform; give the claimant an opportunity for a hearing; and issue a new decision.

R. 483-84.

On January 27, 2014, the Appeals Council, in light of the Court's order remanding the case, entered an order vacating its final decision and remanding the case to the ALJ for further proceedings.  R. 477-82, 523-28.  The Appeals Council's order, in pertinent part, required the ALJ to conduct further evaluation of the opinion evidence from Dr. Allen and Nurse Kearney.  *Id.*

On October 17, 2014, the ALJ entered a decision finding Claimant was not disabled between October 28, 2010 and October 17, 2014.[1]   R. 445-63.   The ALJ's decision is the Commissioner's final decision.  On November 12, 2015, Claimant filed this appeal, challenging the Commissioner's decision that he was not disabled.  Doc. 1

---

[1] The ALJ's decision states that Claimant's alleged onset date was October 28, 2010.  R. 445. However, Claimant's application for DIB alleged an onset date of November 13, 2008.  R. 139-40.  Neither party addressed the discrepancy between Claimant's alleged onset date and the date stated by the ALJ.  Docs. 17; 18.

## II.    STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.  The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III.    ANALYSIS.

### A.  Hypothetical Question to Vocational Expert (VE)

Claimant argued that the Commissioner failed to satisfy his burden of proof at step five of the sequential evaluation process.  Doc. 17 at 16-18.  Specifically, Claimant argued that the ALJ erred when he asked the VE a hypothetical question that was inconsistent with the ALJ's RFC determination.  *Id*.  Conversely, the Commissioner argued that the ALJ posed a hypothetical question to the VE that comprised all of Plaintiff's impairments, and argued in the alternative that

remand is unwarranted because the ALJ incorporated into his decision by reference the hypothetical propounded to the VE.   Doc. 18 at 15-16.   The undersigned finds that the Commissioner's argument is unavailing.

At step five of the sequential evaluation process, once the claimant has proven that the claimant can no longer perform past relevant work, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1228-30 (11th Cir. 1999) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).   An ALJ may rely on the testimony of a VE in determining whether the claimant can perform other jobs in the national economy.   *Id*. at 1229. The ALJ is required to pose hypothetical questions that are accurate and that include all of the claimant's functional limitations.   *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). However, the ALJ need not include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or medical "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Where the ALJ relies on the VE's testimony at step five, but fails to include all the claimant's functional limitations in the hypothetical question, the final decision is not supported by substantial evidence.   *Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).[2]

In this case, the ALJ stated in his RFC determination, among other things, that Claimant could "stand and/or walk (with normal breaks) for two hours in an eight-hour workday."   R. 450.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

However, when propounding his hypothetical to the VE, the ALJ represented that Claimant could "stand and/or walk for six hours in an eight-hour work day."  R. 850.  Contrary to the Commissioner's assertion that this hypothetical question accounted for all of Claimant's impairments, Doc. 18 at 15, this hypothetical failed to account for the ALJ's determination that Claimant could stand and/or walk for only two hours in an eight-hour workday.  Therefore, the ALJ's final decision was not supported by substantial evidence.

The Commissioner's remaining argument, that remand is unwarranted because the ALJ incorporated into his decision by reference the hypothetical propounded to the VE, is not well-taken.  In his decision, the ALJ stated as follows:

> Further, the residual functional capacity (RFC) outlined herein does not purport to be the verbatim RFC propounded by the undersigned administrative law judge (ALJ) to the VE, nor is there any such requirement.  Rather, the RFC specified herein outlines those manifest and appropriate elements of the RFC, which support [t]he decision herein.  Those readers desiring the verbatim RFC propounded to the VE should refer to the electronic recording of the hearing, incorporated herein by reference.

R. 461.  The foregoing, which appears to be nothing more than general form language, in no way relieves the ALJ of his responsibility to include all of Claimant's functional limitations in the hypothetical question propounded to the VE.  Moreover, the issue in this case is not that the ALJ failed to propound to the VE a verbatim recitation of the RFC determination; the issue is that the hypothetical question materially differed from the ALJ's RFC determination.[3]

---

[3] The undersigned declines to find that the discrepancy between the hypothetical question and the RFC determination was the result of a harmless scrivener's error.  Although the ALJ's initial decision stated that Claimant could "stand/walk six hours in an eight-hour workday," which may suggest a scrivener's error, the undersigned notes that the initial decision was signed on January 4, 2012 and that the initial RFC determination differed in other respects from the RFC determination in the ALJ's October 17, 2014 decision.  The undersigned will not hazard a guess as to the true intent of the ALJ.  *See Collier v. Astrue*, No. 11-0550-M, 2012 WL 870225, at *2 (S.D. Ala. 2012).

For the foregoing reasons, it is **RECOMMENDED** that the Court accept Claimant's argument that the Commissioner failed to satisfy his burden of proof at step five of the sequential evaluation process.

### B.  Failure to Apply the Correct Legal Standards to Opinions

Claimant argued that the ALJ erred by failing to apply the correct legal standards to the opinions of Dr. Rodriguez, Dr. Allen, and Nurse Kearney.  Doc. 17 at 2, 12-16.  The Commissioner argued that the ALJ applied the correct legal standards to the opinions of Dr. Rodriguez, Dr. Allen, and Nurse Kearney, and in the alternative, that any purported failure to do so was harmless error. Doc. 18 at 5-15.

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to perform past relevant work.  *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The ALJ is responsible for determining the claimant's RFC.  20 C.F.R. § 404.1546(c).  In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining, and non-examining medical sources.  20 C.F.R. § 404.1545(a)(1), (3); *Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

The weighing of treating, examining, and non-examining physicians' opinions is an integral part of steps four and five of the sequential evaluation process.  In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her

impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. at 1178-79 (citing 20 C.F.R. § 404.1527(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id*. at 1179 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 404.1527(c). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

### i. Dr. Rodriguez

Claimant argued that the ALJ failed to weigh, or even mention, Dr. Rodriguez's opinion that Claimant should avoid heavy lifting. Doc. 17 at 12-14. Claimant argued that said opinion "clearly conflicts" with the ALJ's RFC determination, and that the ALJ was thus required to explain why Dr. Rodriguez's opinion was not adopted. *Id*. at 14. The Commissioner argued that

although the ALJ failed to discuss Dr. Rodriguez's opinion, the error was harmless because the ALJ's RFC determination was supported by substantial evidence, including other treatment records from Dr. Rodriguez's facility.  Doc. 18 at 13-15.  The Commissioner further argued that Claimant failed to show that Dr. Rodriguez's opinion "directly conflicts" with the ALJ's RFC determination.  *Id.* at 14.  The Commissioner's argument is well-taken.

On September 13, 2013, Claimant presented to Dr. Rodriguez at Grace Medical Home (Grace).  R. 691.  Thereafter, Claimant presented to Dr. Rodriguez on multiple occasions over a period of approximately five months.[4]  R. 691-700.  During that time, Dr. Rodriguez referred Claimant for multiple medical tests.  R. 648-49, 651-55, 660-63, 666-69, 672, 691-700.  The undersigned notes that neither the parties nor the ALJ addressed whether or not Dr. Rodriguez was a treating physician.  *See* 20 C.F.R. § 404.1502; *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (holding that the doctor was claimant's treating physician as claimant had treated with the doctor on multiple occasions, the doctor made notes regarding claimant's condition, and the doctor referred claimant to and received updates from other medical professionals).  However, the undersigned need not address this issue at this time.

Contrary to the Commissioner's implicit suggestion that Dr. Rodriguez's records were considered when the ALJ reviewed the records from Grace, there is nothing in the ALJ's decision to suggest that he considered Dr. Rodriguez's records.  R. 454.  The ALJ does not cite to or discuss Dr. Rodriguez's records.  *Id.*  Significantly, the ALJ made no mention of the September 13, 2013 record wherein Dr. Rodriguez advised Claimant to avoid heavy lifting.  *Id.*; R. 693.  The ALJ then stated, while discussing the Grace records, that the "record is absent evidence that work restrictions

---

[4] Claimant presented to Dr. Rodriguez on the following dates: (1) September 13, 2013; (2) November 19, 2013; (3) February 13, 2014; and (4) February 28, 2014.  R. 691-700.

were imposed." R. 454.  Such statement, together with the ALJ's failure to discuss Dr. Rodriguez's opinion, suggests that the ALJ overlooked Dr. Rodriguez's opinion.  The ALJ's failure to consider or weigh Dr. Rodriguez's opinion is error.  *See Winschel*, 631 F.3d at 1178-79.

However, in this case, the ALJ's error was harmless.  First, Dr. Rodriguez's opinion was consistent with the other record evidence, which indicated that Claimant would have difficulty with "very strenuous activity" but that Claimant was capable of frequently lifting twenty-five pounds and occasionally lifting fifty pounds.  R. 54-62, 309-11, 391.  Second, Dr. Rodriguez's opinion did not directly contradict the ALJ's RFC determination, which was that Claimant was capable of performing medium work.[5]  R. 450; *see, e.g.*, *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (similar).

With that said, given that the undersigned has already recommended that this case be remanded because of the ALJ's failure to propound a hypothetical question consistent with his RFC determination, the undersigned recommends that the Court direct the ALJ to remedy his error on remand.  The ALJ's error is one that can be easily remedied on remand.

For the foregoing reasons, it is **RECOMMENDED** that the Court reject Claimant's argument that the decision of the Commissioner should be reversed because the ALJ erred in failing to consider and weigh Dr. Rodriguez's opinion, but nevertheless direct the ALJ to consider and weigh Dr. Rodriguez's opinion on remand.

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

### ii.  Dr. Allen and Nurse Kearney

Claimant argued that the ALJ failed to comply with the Court's November 15, 2013 Order and the Appeals Council's January 27, 2014 Order (collectively the Orders).  Doc. 17 at 14-16.  In addition, Claimant argued that the ALJ failed to apply the correct legal standards to the opinions of Dr. Allen and Nurse Kearney (collectively the Opinions), and that the ALJ's findings were not supported by substantial evidence.  *Id.*  In response, the Commissioner argued that the ALJ properly considered the Opinions, and that the ALJ's findings were supported by substantial evidence.  Doc. 18 at 5-12.  The Commissioner's argument is well-taken.

On November 15, 2013, the Court entered an Order reversing and remanding Claimant's case for further action, including further evaluation of the opinion evidence from Dr. Allen and Nurse Kearney.  R. 483-84.  Then, on January 27, 2014, the Appeals Council entered an Order directing the ALJ to further evaluate the opinion evidence from Dr. Allen and Nurse Kearney.  R. 479-82.  Specifically, the Appeals Council stated, in pertinent part, as follows:

> The evaluation of these opinions is deficient.  For one, the decision gives Nurse Kearney's opinions "little weight" in part because Nurse Kearney is not an acceptable medical source (Tr. 21).  This reasoning is deficient because Nurse Kearney's opinions are co-signed by Dr. Allen, an acceptable medical source (Tr. 395).  Further, the decision's evaluation of Dr. Allen's opinion at B13F is problematic.  The decision gives this opinion "some weight," yet Dr. Allen indicated the claimant had marked social limitations (Tr. 21, 397).  This is significant because the decision assesses the claimant with only mild social difficulties in the "B" criteria (Tr. 15); and although the decision's residual functional capacity contains social limitations, they are not consistent with Dr. Allen's opinion of marked social limitations.  Thus, the "B" criteria and residual functional capacity social limitations are not consistent with Dr. Allen's opinion that was given "some weight," and the decision does not explain this discrepancy.  Further evaluation of the opinion evidence from Nurse Kearney and Dr. Allen is therefore necessary.

R. 479-80.

On October 17, 2014, the ALJ entered his second decision in this matter.  R. 445-63. Therein, the ALJ evaluated Nurse Kearney's opinion and assigned it "some weight" based upon a review of the record as a whole, and articulated specific reasons therefor.  *Id.* at 450-61.  In addition, the ALJ evaluated Dr. Allen's opinion that Claimant had marked social limitations and explained the discrepancy between said opinion and the ALJ's RFC determination.  *Id.*

Claimant offers no specific argument or evidence to support his assertion that the ALJ failed to comply with the Orders.  Doc. 17 at 14-16.  Rather, Claimant appears to rely solely upon the ALJ's purported failure to apply the correct legal standards to the Opinions.  *Id.*  However, as discussed below, the ALJ did not fail to apply the correct legal standards to the Opinions. Moreover, even if the ALJ had failed to apply the correct legal standards to the Opinions, such failure alone would not be sufficient to demonstrate that the ALJ failed to comply with the Orders. A review of the record in this case reveals that the ALJ complied with the Orders by further evaluating the Opinions, regardless of whether the ALJ applied the correct legal standards while doing so.[6]  *Compare* R. 19-21, *with* R. 455-59.  Therefore, Claimant's argument is without merit.

Claimant's next argument appears to be that the ALJ failed to consider Claimant's treatment records from Outlook Clinic before deciding that the Opinions were not entitled to much weight.  Doc. 17 at 15.  Claimant argued that the ALJ's failure to consider the treatment records was error because the treatment records supported the Opinions.  *Id.*  However, Claimant failed to provide any evidence or citations to the record supporting Claimant's position.  *Id.*  Nor did Claimant provide any specific argument to demonstrate how the treatment records supported the

---

[6] Although the undersigned reached this opinion independently based upon a review of the record, the undersigned notes that the Appeals Counsel also rejected Claimant's argument that the ALJ failed to comply with the Court's November 15, 2013 Order.  R. 437-41 ("[T]he Appeals Council finds that the decision complies with the court's order . . . .").

Opinions. *Id*. After conducting a review of the record, the undersigned finds that the ALJ properly considered the treatment records and that the treatment records support the ALJ's determination that the Opinions were not entitled to much weight.

On October 28, 2010, Claimant presented to Outlook Clinic with complaints of nervousness, depression, sadness, crying, and palpitations. R. 355-56. On November 1, 2010, Claimant presented to Dr. Allen and Nurse Kearney for an Initial Psychiatric History and Examination. R. 346-54. The initial examination indicated that Claimant was moderately depressed/anxious, but that Claimant was adequately groomed, made good eye contact, and exhibited good interpersonal skills. R. 352. The examination also indicated that Claimant had average intelligence and "fair" judgment and insight. R. 353. Claimant was not suicidal. R. 348.

Claimant next presented to Outlook Clinic on November 15, 2010. R. 338. The treatment record from this presentation indicated that Claimant was depressed and that Claimant was experiencing mild to moderate issues with agitation, irritability, suicidal ideation, and judgment. *Id*. Thereafter, Claimant continued to present to Outlook Clinic. Claimant's subsequent treatment records indicated that Claimant was no longer experiencing suicidal ideations and that Claimant's other issues were improving. R. 313-71, 399-435, 701-817. For instance, Claimant's treatment record from January 18, 2011 indicated that Claimant's mood was stable and that Claimant was exhibiting normal thought processes, cognition, affect, and arousal. R. 320. The January 18, 2011 treatment record further indicated that Claimant paid attention to grooming and hygiene, and that Claimant was not exhibiting suicidal or self-harming ideations. *Id*. Claimant's medications were reportedly "working great" and Claimant was feeling better overall. R. 363. Although Claimant's treatment records would occasionally indicate that Claimant was experiencing mild to moderate depression and mild to moderate issues with attention, concentration, and memory, taken as a

whole, Claimant's treatment records painted the picture of a stable individual with mostly normal hygiene, thought processes, cognition, affect, and arousal.  R. 313-71, 399-435, 701-817.

Contrary to Claimant's suggestion, there is nothing in the ALJ's decision to suggest that the ALJ failed to consider Claimant's treatment records.  The ALJ discussed Claimant's treatment records at length and determined that the treatment records did not support the Opinions, which consisted of "mere checkmarks" indicating that Claimant had marked to extreme limitations in social interaction, sustained concentration and persistence, adaptation, and the ability to understand and carry out complex instructions, as well as moderate limitations in the ability to understand and carry out simple instructions.  R. 386-89, 392-98, 436, 455-61, 620-27.  After reviewing the record, the undersigned finds that this determination was supported by substantial evidence.

Lastly, Claimant argued that the following statements by the ALJ were not supported by substantial evidence: (1) that Nurse Kearney was only one of several nurse practitioners to treat Claimant; and (2) that Claimant's relationship with Dr. Allen stretched the definition of a "treating source."  Doc. 17 at 15-16; R. 459.  Although a review of the record indicates that the ALJ may have erred when he made the foregoing statements, any such error was harmless.  Despite the ALJ's purportedly incorrect statements, the plain language of the ALJ's decision made clear that the ALJ did not rely on said statements when assigning weight to the Opinions.  Doc. 17 at 15; R. 459 ("For the reasons expressed elsewhere in this decision, their views are given some weight.").  Rather, the ALJ analyzed the Opinions independent of the purportedly incorrect statements and applied the correct legal standards while doing so.  R. 450-61.

Moreover, substantial evidence exists to support the ALJ's determination that the Opinions were only entitled to some weight.  As noted above, a treating physician's opinion may be given

less than substantial weight when good cause is shown. *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

In this case, the ALJ cited to a plethora of evidence to support good cause for giving less than substantial weight to the Opinions. R. 448-61. First, as discussed in more detail above, the Opinions were not consistent with Claimant's treatment records from Outlook Clinic. R. 313-71, 399-435, 701-817. Second, the Opinions were conclusory and consisted of "mere checkmarks" unsupported by explanations or examination findings. R. 386-89, 392-98, 436, 458, 620-27. Third, the Opinions appeared to be contradicted by some of Claimant's reported activities of daily living. R. 165-66, 262, 267, 317, 320, 360-65, 384. Finally, the Opinions were contrary to other opinions offered by a consulting psychologist and two state agency physicians. R. 261-63, 372-84, 390. Therefore, substantial evidence existed to support a finding that there was good cause to give the Opinions less than substantial weight.

For the foregoing reasons, it is **RECOMMENDED** that the Court reject Claimant's argument that the ALJ erred when weighing the opinions of Dr. Allen and Nurse Kearney.

## IV.   <u>REMEDY</u>

Claimant maintains that he has suffered an injustice because the ALJ committed the same error twice and because he "filed for benefits over five years ago." Doc. 17 at 18-19 (citing *Walden*, 672 F.2d at 840). Claimant argued that this case is analogous to *Weary v. Comm'r of Soc. Sec.*, Case No. 6:14-cv-1742-Orl-GJK, 2016 WL 1030800 (M.D. Fla. Mar. 15, 2016), which was

remanded for an award of benefits. *Id.* at 18-19. Therefore, Claimant argued, the Court should follow *Weary* and remand this case for an award of benefits. *Id.* The Commissioner argued that remand for an award of benefits is not appropriate because the cumulative effect of the evidence does not establish disability beyond a doubt. Doc. 18 at 16 n.5 (citing *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993)).

The Court may remand a social security disability case for an award of benefits where the Commissioner has already considered the essential evidence and it establishes disability beyond a doubt, *Davis*, 985 F.2d at 534, or where the claimant has suffered an injustice, *see Walden*, 672 F.2d at 840. Claimant argued that he suffered an injustice. Doc. 17 at 11-12. Therefore, the undersigned will consider whether Claimant suffered an injustice.

In *Weary*, the Court initially remanded the Commissioner's decision so the ALJ could further consider whether claimant's noncompliance with her medications was based on financial difficulties. *Weary*, 2016 WL 1030800, at *1. The Appeals Council subsequently instructed the ALJ to further consider claimant's credibility with respect to her noncompliance with medications and prescribed weight loss regimen, as well as her ability to afford her treatments. *Id.* Thereafter, the ALJ held two hearings and issued a partially favorable decision, finding claimant became disabled several years after her alleged onset date. *Id.* at *2. The claimant appealed, arguing that the ALJ failed to comply with the Court's and Appeals Council's remand orders, and erred in finding her subjective complaints not entirely credible. *Id.* at *1. The Court agreed, finding the ALJ failed to comply with the Court's and Appeals Council's remand orders, materially misstated the record in support of his credibility determination, and failed to comply with well-established law when considering claimant's noncompliance with medications and prescribed weight loss regimen. *Id.* at *2-7. In light of the history of the case, the ALJ's apparent ignorance of the Court's

and Appeals Council's remand orders, and the ALJ's erroneous findings, the court found that claimant suffered an injustice and remanded for an award of benefits. *Id*.

Contrary to Claimant's assertion, this case is not analogous to *Weary*. As explained in detail above, the ALJ properly evaluated the opinions of Dr. Allen and Nurse Kearney in compliance with the orders of the Court and the Appeals Council. The errors that the ALJ committed in his October 17, 2014 decision were wholly unrelated to Claimant's prior case. One involved an incorrect hypothetical that the ALJ propounded to the VE on July 30, 2014, after Claimant's prior case had concluded. The other involved the ALJ's failure to weigh an opinion contained within medical records from 2013, also after Claimant's prior case had concluded. Therefore, the undersigned declines Claimant's invitation to find that this case is analogous to *Weary*. The undersigned also declines to find that Claimant has suffered an injustice worthy of remand for an award of benefits solely because Claimant "filed for benefits over five years ago."

The ALJ, on remand, is required to consider and reweigh all of the medical and opinion evidence, including Dr. Rodriguez's records and opinion. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record). In addition, the ALJ shall ensure that the hypothetical question he propounds to the VE is accurate and includes all of Claimant's functional limitations. *See Pendley*, 767 F.2d at 1563. Lastly, the ALJ shall clarify, on the record, Claimant's alleged onset date.[7]

For the foregoing reasons, it is **RECOMMENDED** that the Court reverse and remand this case for further proceedings.

---

[7] As the undersigned noted above, the record refers to both November 13, 2008 and October 28, 2010 as Claimant's alleged onset date. R. 139-40, 144, 149, 240. Moreover, the parties appear to disagree as to the alleged onset date. Claimant stated in his brief that the alleged onset date was November 13, 2008. Doc. 17 at 2. The Commissioner stated in her brief that the alleged onset date was October 28, 2010. Doc. 18 at 2.

V.       **CONCLUSION**.

Accordingly, it is **RECOMMENDED** that the Court:

1.       **REVERSE** and **REMAND** the final decision of the Commissioner for further

proceedings; and

2.       Direct the Clerk to enter judgment in favor of Claimant and against the

Commissioner, and close the case.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 12, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy